UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN D. GEBHART,              :     **CIVIL NO. 1:06-CV-1754**
                                :
            Plaintiff           :     (Judge Conner)
                                :
        v.                      :     (Magistrate Judge Smyser)
                                :
JOHN V. VAUGHN, II and          :
CURTIS A. WHITMOYER,            :
                                :
            Defendants          :

### REPORT AND RECOMMENDATION

I. Background and Procedural History.

The plaintiff, Steven D. Gebhart, commenced this action by filing a complaint on September 7, 2008. The defendants are John Vaughn II, a detective with the Northern York County Regional Police Department, and Curtis A. Whitmoyer, a Pennsylvania State Police Trooper. The plaintiff alleges that the defendants unlawfully filed criminal charges against him, maliciously prosecuted him and engaged in a course of conduct to destroy his business. He claims that the defendants violated his rights under the First, Fourth, Sixth, Seventh and Fourteenth Amendments.

On July 9, 2006, defendant Whitmoyer filed an answer to the complaint, and on July 10, 2006, defendant Vaughn filed an answer to the complaint.

A case management order (doc. 9) was entered on December 15, 2006.  Amended case management orders were entered on July 3, 2007 (doc. 18), August 22, 2007 (doc. 21), December 5, 2007 (doc. 33) and February 5, 2008 (doc. 40). Additionally, the deadline for filing dispositive motions was extended to April 30, 2008 (doc. 45).  This case is on Judge Conner's December 2008 trial list (doc. 61).

Currently pending in this case are two motions for summary judgment - a motion filed by each of the defendants.

II.  Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its

2

pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law. *Anderson*, *supra*, 477 U.S. at 248.  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

III.   Material Facts.

        The following facts are not in dispute.

        The plaintiff owns and operates a pole building
business called Abbottstown Pole Building (Abbottstown Pole).
*Doc. 50, Statement of Material Facts in Support of Defendant
Whitmoyer's Motion for Summary Judgment at ¶1 and Doc. 64,
Plaintiff's Counterstatement of Material Facts in Response to
the Consise Statement of Material Facts Filed Pursuant to Local
Rule 56.1 by Defendant Whitmoyer at ¶1.*  Abbottstown Pole
constructs pole buildings which can be houses, garages, horse
arenas, barns or other structures. *Id. at ¶2.*

        Defendant Whitmoyer is a criminal investigator with the
Pennsylvania State Police and has been working in that capacity
since 1992. *Id. at ¶3.*  As part of his responsibilities,
defendant Whitmoyer conducts in depth investigations in all
types of criminal cases. *Id. at ¶4.*

        On March 4, 2002, Kenneth Ogg contacted the
Pennsylvania State Police station in Gettysburg and reported
that despite the fact that he had contracted with the plaintiff
to have a pole building constructed and had paid the plaintiff
several thousand dollars, the plaintiff had failed to do the
work and had failed to return his money. *Id. at ¶5.*  Defendant
Whitmoyer was the officer assigned to handle the investigation
into the matter.  *Id. at ¶6.*

4

After completing his investigation into Mr. Ogg's allegations, defendant Whitmoyer spoke with the district attorney of Adams County. *Id. at* ¶12.  The district attorney reviewed the matter and advised defendant Whitmoyer to file criminal charges of theft by deception and deceptive business practices against the plaintiff. *Id.*  The plaintiff ultimately pleaded guilty to theft by deception, a third degree felony, and was ordered to pay $12,811 in restitution. *Id. at* ¶13.

The district attorney asked defendant Whitmoyer to investigate whether there were any other victims of Abbottstown Pole. *Id. at* ¶14.  Defendant Whitmoyer was told to check the district magistrate judges' offices to see if other customers of Abbottstown Pole had filed complaints against the company. *Id. at* ¶15.  Defendant Whitmoyer contacted the magisterial district judges in York County to determine whether others had filed complaints against the plaintiff's business. *Id. at* ¶16. After learning that other persons had complained, defendant Whitmoyer went to the people who had filed complaints against Abbottstown Pole and interviewed them. *Id. at* ¶17.

During his investigation, defendant Whitmoyer looked into a complaint filed against Abbottstown Pole by Premier Auto Sales, but defendant Whitmoyer did not pursue criminal charges because Premier Auto Sales did not want to prosecute. *Id. at* ¶18.

As a result of defendant Whitmoyer's investigation, criminal charges were filed by the Pennsylvania State Police involving the cases of several purported victims including James Schwartz. *Id. at* ¶19.  During the preliminary hearing in the Schwartz case, defendant Whitmoyer agreed to a continuation of the hearing so that the plaintiff and Schwartz could try to resolve the matter. *Id. at* ¶20.  Before the rescheduled preliminary hearing, the plaintiff and Schwartz worked out a deal and defendant Whitmoyer dropped the criminal charges in that case. *Id. at* ¶21.

As a result of defendant Whitmoyer's investigation, the plaintiff was criminally charged in connection with a contract between the plaintiff and Jamie Hartlaub. *Id. at* ¶22.  The plaintiff pleaded guilty to this charge. *Id.*  He was ordered to pay $5,900 to Mr. Hartlaub. *Id.*

As a result of defendant Whitmoyer's investigation, the plaintiff was charged with theft by deception and with theft by failure to make required disposition of funds relative to a contract the plaintiff entered into with Jeffery Kane. *Id. at* ¶25.  The charges against the plaintiff concerning Mr. Kane were based on a written contract entered into in March of 2004 for the construction of a pole building. *Id. at* ¶30.  Before entering into the contract, Mr. Kane and the plaintiff did not know each other personally. *Id. at* ¶31.  On April 1, 2004, Mr. Kane and the plaintiff signed a revised contract. *Id. at* ¶32.

6

On June 22, 2004, the plaintiff was arrested on terroristic threats and bad check charges. *Id. at* ¶34.  He was incarcerated until July 30, 2005. *Id. at* ¶33.

From the time that he was incarcerated on June 22, 2004 until November of 2004, the plaintiff kept in regular contact with Abbottstown Pole personnel for the purpose of continuing to run the business. *Id. at* ¶35.

On June 29, 2004, Mr. Kane gave Abbottstown Pole a check for $6,760 made payable to Carter Lumber to purchase lumber for the project. *Id. at* ¶36.  Later, Mr. Kane called the lumber company and was told that the plaintiff paid the $6,760 to Carter Lumber and told the lumber company to apply it to the plaintiff's general account. *Id. at* ¶37.  After Mr. Kane explained the circumstances to the lumber company, the lumber company transferred the monies to Mr. Kane's account. *Id.*

From August 1, 2004 to August 15, 2004, Mr. Kane called the plaintiff's company more than 25 times to find out when the work would be completed. *Id. at* ¶38.  The company would not take his calls. *Id.*  Nor were his calls returned. *Id.*  As indicated above, the plaintiff was incarcerated during this time. *See Id. at* ¶¶33 & 34.

On August 6, 2004, Mr. Kane's attorney wrote to Abbottstown Pole demanding that either the plaintiff fully perform under the contract or refund Mr. Kane's money to Mr.

Kane. *Id. at ¶39.* The letter from Mr. Kane's attorney stated that if the building was not completed by August 31, 2004 he was going to demand repayment of the $1700 deposit and refer the matter to the district attorney's office for prosecution against the plaintiff and his company for fraud, deceptive business practices and theft (failure to make required disposition of funds). *Id. at ¶40.* The letter from Mr. Kane's attorney was forwarded from Abbottstown Pole to the plaintiff at the jail. *Id. at ¶41.* After receiving the letter, the plaintiff wrote a letter to Mr. Kane explaining what was going on. *Id. at ¶44.*

On August 17, 2004, defendant Vaughn filed four criminal complaints charging the plaintiff with theft by deception based on the plaintiff's actions relevant to transactions with Walter Zeigler & Sons, Douglas Arentz, Albert Smith and Tom Marasciullo. *Doc. 57, Concise Statement of Material Facts to Which the Moving Party Contends There is No Genuine Issue to be Tried Pursuant to Local Rule 56.1 at ¶2 and Doc. 69, Plaintiff's Counterstatement of Material Facts in Opposition to Defendant's Concise Statement of Material Facts to Which the Moving Party Contends There is No Genuine Issue at ¶2.* The criminal complaints were accompanied by affidavits of probable cause outlining facts defendant Vaughn learned during the course of his investigation. *Id. at ¶3.* Magisterial District Judge Gerald Shoemaker analyzed the criminal complaints and supporting affidavits, found that probable cause had been stated and, on August 19, 2004, issued four warrants

for the arrest of the plaintiff. *Id. at ¶4.*  However, as already indicated, the plaintiff was already incarcerated at this time.  *Doc. 69, Plaintiff's Counterstatement of Material Facts in Opposition to Defendant's Concise Statement of Material Facts to Which the Moving Party Contends There is No Genuine Issue at ¶4.*

Defendant Whitmoyer interviewed Mr. Kane and his wife on August 24, 2004 as part of his investigation. *Doc. 50, Statement of Material Facts in Support of Defendant Whitmoyer's Motion for Summary Judgment at ¶45 and Doc. 64, Plaintiff's Counterstatement of Material Facts in Response to the Consise Statement of Material Facts Filed Pursuant to Local Rule 56.1 by Defendant Whitmoyer at ¶45.*

Although the plaintiff could not visit the job site because he was in jail, he was told by Abbottstown Pole that certain work on the Kane contract was done (the building was laid out, sod was take off, holes lined up where the posts go and the holes drilled). *Id. at ¶42.*

Mr. Kane's recollection is that on August 31, 2004 for approximately 1.5 hours employees of the plaintiff drilled post holes and moved dirt at the location. *Id. at ¶43.*

On September 29, 2004, defendant Vaughn filed a fifth criminal complaint, charging the plaintiff with theft by deception based on the plaintiff's dealings with Steven

9

Parinisi. *Doc. 57, Concise Statement of Material Facts to Which the Moving Party Contends There is No Genuine Issue to be Tried Pursuant to Local Rule 56.1 at ¶5 and Doc. 69, Plaintiff's Counterstatement of Material Facts in Opposition to Defendant's Concise Statement of Material Facts to Which the Moving Party Contends There is No Genuine Issue at ¶5.* The complaint was supported by an affidavit of probable cause. *Id. at ¶6.* After finding probable cause, Magisterial District Judge Shoemaker issued a warrant for the arrest of the plaintiff. *Id.* However, as already indicated, the plaintiff was already incarcerated at this time. *Doc. 69, Plaintiff's Counterstatement of Material Facts in Opposition to Defendant's Concise Statement of Material Facts to Which the Moving Party Contends There is No Genuine Issue at ¶6.*

Defendant Vaughn filed a total of five criminal charges against the plaintiff for theft by deception in violation of 18 Pa.C.S.A. § 3922(a)(1). *Doc. 57, Concise Statement of Material Facts to Which the Moving Party Contends There is No Genuine Issue to be Tried Pursuant to Local Rule 56.1 at ¶1 and Doc. 69, Plaintiff's Counterstatement of Material Facts in Opposition to Defendant's Concise Statement of Material Facts to Which the Moving Party Contends There is No Genuine Issue at ¶1.* Prior to filing the charges, defendant Vaughn sought the advice of the York County District Attorney. *Id. at ¶8.* An attorney from the York County District Attorney's office approved each of the five charges before defendant Vaughn filed the criminal complaints. *Id. at ¶9.*

In September of 2004, defendant Whitmoyer filed charges against the plaintiff of theft by deception and theft by failure to make required disposition of funds based on the plaintiff's dealings with regard to Mr. Kane. *Doc. 50, Statement of Material Facts in Support of Defendant Whitmoyer's Motion for Summary Judgment at ¶46 and Doc. 64, Plaintiff's Counterstatement of Material Facts in Response to the Consise Statement of Material Facts Filed Pursuant to Local Rule 56.1 by Defendant Whitmoyer at ¶46 and Doc. 57, Exhibit F, Attachment A.* On October 26, 2004, a preliminary hearing was held on those charges. *Doc. 50, Statement of Material Facts in Support of Defendant Whitmoyer's Motion for Summary Judgment at ¶47 and Doc. 64, Plaintiff's Counterstatement of Material Facts in Response to the Consise Statement of Material Facts Filed Pursuant to Local Rule 56.1 by Defendant Whitmoyer at ¶47.* Mr. Kane testified at the preliminary hearing. *Id. at ¶48.* As a result of the preliminary hearing, the theft by deception charge was bound over and the theft by failure to make required disposition of funds charge was dropped. *Id. at ¶49.* The theft by deception charge was subsequently *nolle prossed. Id. at ¶50.*

The pole building Mr. Kane contracted for was never completed by Abbottstown Pole. *Id. at ¶51.* The plaintiff never refunded any of the money he received from Mr. Kane on the contract. *Id. at ¶52.*

11

During his investigation, defendant Whitmoyer did not pressure or encourage any of those he spoke with to press criminal charges against the plaintiff. *Id. at ¶23.*[1]  All of the charges which were initiated against the plaintiff based on defendant Whitmoyer's investigation were filed at approximately the same time. *Id. at ¶24.*

After defendant Whitmoyer's investigation was complete, somebody from the Northern York Regional County Police Department contacted him about the plaintiff. *Id. at ¶26.* Defendant Whitmoyer is not sure whether the person who contacted him was defendant Vaughn, and defendant Vaughn does not remember whether he ever spoke with defendant Whitmoyer. *Id. at ¶¶27 & 28.*

The charge of theft by deception filed by defendant Vaughn against the plaintiff based on the plaintiff's dealings with Mr. Parinisi went to trial but was dismissed at trial by Judge Blackwell of the Court of Common Pleas of York County, Pennsylvania. *Doc. 69, Plaintiff's Counterstatement of Material Facts in Opposition to Defendant's Concise Statement of Material Facts to Which the Moving Party Contends There is No Genuine Issue at ¶10.*  The Commonwealth subsequently withdrew

---

[1] In his response to defendant Whitmoyer's statement of material facts, the plaintiff actually denies this statement. The plaintiff, however, has not cited to any evidence to contradict this statement.  Accordingly, the statement is deemed admitted.

the remaining charges filed by defendant Vaughn against the
plaintiff. *Id.*

IV.  Discussion.

     The plaintiff's claim in this case against defendant
Whitmoyer is a malicious prosecution claim based on the charges
filed by defendant Whitmoyer in connection with the Kane
contract.  *See Doc. 50 at ¶29 and Doc. 64 at ¶29.*  The
plaintiff's claims in this case against defendant Vaughn are
malicious prosecution claims based on the five charges filed by
defendant Vaughn in connection with the plaintiff's
transactions with Walter Zeigler & Sons, Douglas Arentz, Albert
Smith, Tom Marasciullo and Steven Parinisi.[2]

     The plaintiff's malicious prosecution claims are based
on the Fourth Amendment.[3]  "To prove malicious prosecution under

---

[2]  In his brief in opposition, the plaintiff addresses these
charges as false arrest as well as malicious prosecution
claims.  However, false arrest applies to detention without
legal process. *See Wallace v. Kato*, 127 S.Ct. 1091, 1095
(2007).  In the instant case, arrest warrants were issued for
the plaintiff's arrest in connection with the charges filed by
defendant Vaughn.  Therefore, any detention of the plaintiff in
connection with those charges was pursuant to legal process and
malicious prosecution rather than false arrest is the
applicable claim.

[3] In his complaint, the plaintiff mentions the First,
Fourth, Sixth, Seventh and Fourteenth Amendments.  A 42 U.S.C.
§ 1983 malicious prosecution claim may not be based on
substantive due process. *See Albright v. Oliver,* 510 U.S. 266,

(continued...)

section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr,* 477 F.3d 81-82 (3d Cir. 2007)(footnote omitted).

Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a reasonable person to believe than an offense has been or is being committed by the person to be arrested. *Orsatti v. New Jersey State Police,* 71 F.3d 480, 483 (3d Cir. 1995).  Probable cause requires more than mere suspicion. *Id.* at 482. "[H]owever, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Id.* at 483.

---

[3](...continued)
275 (1994)(holding that claim of prosecution without probable cause can not be brought as a substantive due process claim). The First, Sixth and Seventh Amendments are not even arguably applicable in this case.  Thus, we construe the plaintiff's malicious prosecution claims as based on the Fourth Amendment.

14

In a 42 U.S.C. § 1983 action the issue of whether there was probable cause to make an arrest is generally a question for the jury. *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 788 (3d Cir. 2000).  However, where no genuine issue as to any material fact exists and where credibility conflicts are absent, judgment as a matter of law may be appropriate. *Sharrar v. Felsing*, 128 F.2d 810, 818 (3d Cir. 1997).  "The question is for the jury only if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause to arrest." *Id.*

A. Defendant Whitmoyer's Motion for Summary Judgment.

Defendant Whitmoyer contends that he is entitled to summary judgment because there was probable cause for him to file charges[4] against the plaintiff in connection with the Kane contract.

Defendant Whitmoyer charged the plaintiff with theft by deception in violation of 18 Pa.C.S.A. § 3922.

18 Pa.C.S.A. § 3922, entitled Theft by Deception, provides, in pertinent part:

---

[4] Although there is reference in the record to defendant Whitmoyer obtaining an arrest warrant regarding the charges he filed against the plaintiff regarding the Kane contract, *See doc. 51-7 at 10 of 23,* no arrest warrant or affidavit of probable cause has been provided by defendant Whitmoyer in support of his motion for summary judgment.

> (a) Offense defined.-- A person is guilty of
> theft if he intentionally obtains or withholds
> property of another by deception.  A person
> deceives if he intentionally:
>> (1) creates or reinforces a false
>> impression, including false impressions
>> as to law, value, intention or other
>> state of mind; but deception as to a
>> person's intention to perform a promise
>> shall not be inferred from the fact alone
>> that he did not subsequently perform the
>> promise[.]

We will focus upon the evidence known to the defendant police officer at the time that he initiated criminal charges in considering whether the officer had probable cause to believe that the plaintiff had committed a theft offense.  We conclude, as a matter of law, that based on the facts known to defendant Whitmoyer at the time that he filed the theft by deception charge against the plaintiff based on the Kane contract there was probable cause to believe that the plaintiff had committed theft by deception.  The undisputed facts are that the plaintiff and Kane entered into a contract for a pole building.  The pole building was never built and the deposit money that Kane provided to the plaintiff was never returned.  Those facts in and of themselves probably would not amount to probable cause to believe that the plaintiff committed theft by deception.  However, when those facts are combined with the pattern of the plaintiff of similar conduct in a number of other cases (Ogg case, Premier Auto Sales case, James Schwartz case and Jamie Hartlaub case), which pattern was known to defendant Whitmoyer, a reasonable person would believe that the plaintiff had intentionally obtained or withheld the deposit given him by Kane without intending to complete the building

16

set forth in the contract.  It is not unreasonable for a
charging officer to consider in deciding whether there was
probable cause to believe that a contractor had intended to
deceive a consumer from whom he had taken money and to whom he
had promised to complete the contractual work that the
contractor had formally admitted in court to deceiving other
consumers in similar circumstances involving similar contracts.

The plaintiff contends that there was no evidence of an
intent on his part to defraud and that the failure to complete
the contract is a civil matter rather than a criminal matter.
A failure to perform a contractual undertaking is a civil
matter.  If there is an intent not to perform, the
representation that one will perform and the receipt of money
based upon that representation is also a criminal matter.  A
failure to perform on one contract may not normally lead to a
reasonable inference of an intent to deceive.  However, when
combined with a pattern of similar conduct, an intent to
deceive can be inferred from the combination of a failure to
complete the building and a failure to return the deposit.

The plaintiff contends that he did not perform under
the contract because he was incarcerated at the time, and that
the fact of his incarceration was not appropriately taken into
account by the defendant in evaluating whether criminal fraud
was present.  It is not clear from the record in this case that
defendant Whitmoyer knew at the time he filed the charges that
the plaintiff was already incarcerated.  Nevertheless, assuming

17

arguendo that defendant Whitmoyer did know that the plaintiff
was incarcerated, the fact that the plaintiff was incarcerated
does not negate a reasonable inference of probable cause to
believe that the plaintiff committed theft by deception when
all circumstance known to defendant Whitmoyer are considered.
What the plaintiff knew when he contracted, what
representations he made, what his circumstances were, what he
communicated to consumers and other factors would all be
relevant factors at the criminal trial.  But the question of
probable cause involves what defendant Whitmoyer knew when he
charged the plaintiff.  Defendant Whitmoyer was not required to
rule out all possibility of an acquittal.  Even recognizing
that the fact of the plaintiff's incarceration could be a
factor that the jury might weigh in favor of acquittal,
defendant Whitmoyer is reasonably seen to have had probable
cause to support the initiation of a criminal prosecution of
the plaintiff for theft by deception.

        The plaintiff has failed to show that there is evidence
to support his burden to show that defendant Whitmoyer filed
the theft by deception charge without probable cause.

        Defendant Whitmoyer also charged the plaintiff with the
Pennsylvania Crimes Code offense of failure to make required
disposition of funds received in violation of 18 Pa.C.S.A.
§ 3927.

18 Pa.C.S.A. § 3927, entitled Theft by Failure to Make Required Disposition of Funds Received, provides, in pertinent part:

> (a) Offense defined.– A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition.  The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

The plaintiff has failed to show that a fact finder could reasonably find that defendant Whitmoyer filed the theft by failure to make required disposition of funds received charge without probable cause.[5]  The undisputed facts are that, on June 29, 2004, Mr. Kane gave Abbottstown Pole a check for $6,760 made payable to Carter Lumber to purchase lumber for the project.  Later, Mr. Kane called the lumber company and was told that the plaintiff told the lumber company to apply the $6,760 check to his general account.  After Mr. Kane explained the circumstances to the lumber company, the lumber company transferred the monies to Mr. Kane's account.  Given those facts, a reasonable person would believe that the plaintiff obtained the $6,760 check from Kane upon an agreement to apply

---

[5] The plaintiff does not address the theft by failure to make required disposition of funds received charge in his brief in opposition.

19

the check toward the purchase of lumber toward the Kane
building but then, by having the lumber company apply the check
to his general account, intentionally dealt with the check as
his own and failed to make the required disposition of the
check.  Accordingly, there was probable cause for the theft by
failure to make required disposition of funds received charge
filed by defendant Whitmoyer.

Defendant Whitmoyer also contends that he is entitled
to qualified immunity.  Since we conclude that there was
probable cause for the charges against the plaintiff filed by
defendant Whitmoyer, we do not address qualified immunity.

B. Defendant Vaughn's Motion for Summary Judgment.

Defendant Vaughn contends that he is entitled to
summary judgment because, he asserts, there was probable cause
for him to file the five theft by deception charges that he
filed against the plaintiff.

Defendant Vaughn obtained arrest warrants in connection
with the theft by deception charges that he filed against the
plaintiff.

The affidavit of probable cause submitted by defendant
Vaughn on August 17, 2004 in connection with the theft by

deception charge based on the plaintiff's dealing with Douglas
Arentz provides:

> IR#0413743
> On July 23, 2004, Mr. Douglas Arentz called to
> advise of an encounter he had with Steven
> Gebhart.  He reported that sometime in October
> of 2003 he contracted Gebhart to build a pole
> building for him in the amount of $14,500.00.
> Gebhart started the building and then stopped.
> The building currently is not finished and Mr.
> Arentz has made several calls to the business
> and received no money or completion of the
> job.  He has paid Gebhart to date in cash
> $13,100.00.  I advised Mr. Arentz to fax me
> the contract and send a letter to Gebhart's
> business via certified mail requesting either
> work or payment.  I told him due to the
> numerous complaints of this nature I could
> establish a pattern of deceptive business
> practice and file charges.  Total loss of
> victim in this incident is $13,100.00.  The
> following three additional cases involve the
> same or similar pattern of deceptive business
> practices employed by Steven Gebhart and in
> each incident criminal charges were filed.

> IR#0413521 I spoke to Jeff Arnold from
> Standard Concrete formally [sic] known as
> Walter Zeigler's and Sons Inc.  He advised
> that their business took an order for concrete
> on May 10, 2004 for a building project located
> at 140 Community Street in Wellsville.  The
> building site was the residence owned by Doug
> Arentz who contracted Steven Gebhart to build
> for him. Mr. Arnold advised their business is
> familiar with Steven Gebhart and because of
> past incidents of Gebhart failing to pay they
> do not normally accept any business from
> Gebhart.  He advised somehow this order went
> through.  He advised when he received the
> check and saw Gebhart[']s name he felt
> reasonably certain there was no money to cover
> it.  He called the bank and asked if this was
> the case.  He said he was advised there was
> not enough money to cover the amount of the
> check by bank personnel.  He waited until May
> 26, 2004 and tried to deposit the check and
> found it came back "stop payment." Mr. Arnold
> went to Shoemaker court to file a civil
> complaint and was advised to check with me
> first.  I advised Mr. Arnold he could pursue
> the matter criminal or civil and explained the
> differences.  Mr. Arnold chose to pursue it in

21

a criminal fashion thus requested charges.
Certified mail was sent to Gebhart requesting
payment which was returned unclaimed.  The
check in question is check number 3028 in the
amount of $1,137.65.  I copied the check and
all relative documents for evidence.  I
contacted the security division of Orrstown
Bank and found that Steven Gebhart is the only
account user and is the one who requested a
stop payment of check number 3028 on May 11,
2004.  The account had enough money in to
satisfy the check on the date of issue and the
date May 26, 2004 that Standard Concrete tried
to deposit it.  Total loss of victim is
$1,137.65.

. . .

IR#0413745 On July 23, 2004 I spoke to Joy
Marasciullo.  She called advising she is the
power of attorney for her 81 year old father
who resides with her brother Tom Marasciullo
in Lewisberry.  She advised Tom contracted
Steve Gebhart with Abbottstown Pole Buildings
to put on a roof at his residence which also
serves as his business.  The contract was made
on April 3, 2004.  It wasn't until June 18,
2004 Gebhart brought a small amount of
material to the house and requested a second
payment.  The initial deposit was $1,200.00
and the second time it was $8,000.00.  Gebhart
personally advised Tom that there would be
workers on his roof the following day which
never happened.  Despite numerous calls the
roof was never completed or even started nor a
refund given of money.  Joy was calling for
her brother.  I had her fax the contract and
any other information relative [sic].  I
received about six documents by fax including
one where Joy filed a complaint with the
better business bureau about Gebhart.  On this
paper was a cell number for the secretary of
Gebhart's Business, Beth Stevens.  I told Joy
I would call Tom to get the rest of the
information.  I called Beth and spoke to her
about this incident.  She said she worked for
Gebhart for four and a half months until
finally she was disgusted with Gebhart having
her lie for him.  She said Gebhart told her to
tell Tom Marasciullo that once he paid for
damage to telephone poles he would pay Tom.
She said this went on for a while and it was
made clear that if she didn't lie she would be
fired.  She said she personally was given cash
by Gebhart to make good on several Bad checks.

She advised she asked Gebhart when he would
get jobs done and he replied when he would get
the money.  However Beth knew that he was
getting paid by the customers.  She also
advised there was several times she and the
other employees had to wait to cash their
checks so they wouldn't bounce.  Beth Stevens
position was that of bookkeeping and [she] had
a good working knowledge of the customers[']
files and business that took place.  She
advised she was personally aware of multiple
customers that paid money to contract Steven
Gebhart to build pole buildings and the jobs
were not performed.  I contacted Tom
Marasciullo who was able to provide copies of
checks paid to Steven Gebhart and verified the
aforementioned to be true and correct.  Tom
advised he spoke with Beth the secretary.  She
told him on several occasions that his
materials were on back order and that was the
reason his roof was not complete.  However,
Beth advised the materials were never ordered
and that Steven Gebhart was aware of this and
had her lie to Mr. Marasciullo.  I also was
contacted by State Attorney Melissa
Hockensmith from Carrol[l] County Maryland.
She advised that in March of 2003 she
prosecuted Gebhart for theft in two cases
which had four separate victims.  The amount
of theft in this case was $40,819.00 and
Gebhart received a twelve year suspended
sentence.  The cases were similar in that
Gebhart was contracted to do work he did not
perform and accepted payment.  Melissa
Hockensmith advised during their investigation
the secretary at the time Mona Holtzapple
provided information which bolstered the
charges against Gebhart.  I also contacted
Mona Holtzapple.  She advised she could recall
several times the course of her work day was
that of buying back bad checks.  She said if
Steven Gebhart had ten days to pay on a bad
check then the tenth day he would give her
cash to make good on the checks so it would
not go criminal.  She also recalled several
occasions where Steven Gebhart would make
contracts and accept monies, however [he]
failed to do the work.  Mona advised Gebhart
would request that she lie to customers who
called to ask when the work would be done.  I
was also advised that during the same time
frame there was a trooper Whitmoyer from
Pennsylvania Gettysburg State Police handling
similar charges on Gebhart.  I found that
Gebhart was on Probation in five different

counties including the out of state counties for the same or similar type charges. The case of Tom Marasciullo is one of four that I have been made aware of and that the victims want prosecution. I know of several other cases in which the victims filed civil suit. I know of even further cases where victims chose to wait for work to be done despite months of unfulfilled promises. This one case is simply an ingredient in the recipe for a long pattern of deceptive business practices employed by Steven Gebhart. The total amount of the victims loss is $9,200.00.

IR#0413429
On July 17, 2004, Albert Smith reported that he signed a contract with Steven Gebhart to build a pole building. Mr. Smith gave Steven Gebhart a check for $4,600 which according to him was ten percent down. Mr. Smith advised it wasn't until April 20, 2004 that Gebhart came out and staked out a building. On this day he told Albert Smith he needed more money for materials thus Mr. Smith gave him another check in the amount of $18,400.00. Construction was to begin May 1, 2004. Mr. Smith called the business on May 3rd and was told the bobcat was tied up on another project. He called on May 11, 2004 and was told the Bobcat was broken. He called again on May 18, 19, and 20th of 2004 and left messages with no callback. On May 24, 2004 Gebhart came out and moved some dirt around. May 31, 2004 more soil was brought to the site. Mr. Smith called several other times in between this and was given various excuses. The one that stood out in his mind was that the secretary told him the business was at his house working one day, however Mr. Smith works at home and the day he was told the business was at his house he was home and no one came to his house. He was told that Steve Gebhart was sick among other things as to the reason[] his building was not being worked on. Mr. Smith advised that on July 6, 2004 the secretary, Beth, told him that Steve was in jail and that she was sick of lying for him. Mr. Smith kept a contemporaneous log of his calls and the contacts he had with Steven Gebhart. The total amount of the victim[']s loss is $23,000.00.

The total combined loss of the four incidents is $46,437.65.

24

*Doc. 54-4.* The affidavits of probable cause submitted by

defendant Vaughn in connection with the theft by deception

charge based on the plaintiff's dealings with Walter Zeigler &

Sons, Albert Smith and Tom Marasciullo were also submitted to

the magisterial district judge on August 17, 2004 and contain

the same information as quoted above. *Docs. 54-3, 54-5 & 54-6.*

The affidavit of probable cause submitted by defendant Vaughn

on September 29, 2004 in connection with the theft by deception

charge based on the plaintiff's dealings with Steven Parinisi

provides:

> On September 7, 2004 I spoke to Steve Parinisi
> who advised he contracted Steven Gebhart to
> build a pole building.  He signed a contract
> on April 28, 2004.  Mr. Paranisi [sic]
> insisted he put a time limit on the contract
> which Gebhart did.  The contract stated the
> building would be finished within forty five
> days which has past.  The total cost of the
> building was $36,000.00 and Mr. Paranisi [sic]
> gave Gebhart $3,600.00 by check number 664.
> Mr. Paranisi [sic] had made several calls
> since then with no result.  He advised Gebhart
> even called him and said the price of steel
> went up and asked for forty percent more of
> the building cost which Mr. Paranisi [sic]
> refused to do.  I generated an incident report
> with the information provided.  In total I had
> twenty two reports involving Steven Gebhart.
> I sent all of the cases to the District
> Attorney's Office for review. District
> attorney Brian Jacisin reviewed the cases and
> advised which cases rose to the level of
> criminal charges.  The case herein was deemed
> to be criminal thus the charge of theft by
> deception was filed.

*Doc. 54-7.*

We conclude as a matter of law that, based on the facts

set forth by defendant Vaughn in his affidavits of probable

cause, defendant Vaughn had probable cause to reasonably believe that the plaintiff had committed theft by deception in connection with the five charges filed against the plaintiff by defendant Vaughn.

The plaintiff contends that there was no evidence of an intent on his part to defraud and that the failure to complete contracts is a civil matter rather than a criminal matter.  As discussed above, a failure to perform on one contract of itself does not lead reasonably to an inference of an intent to deceive.  However, when a failure to perform is considered in combination with a pattern of similar conduct, an intent to deceive can reasonably be inferred from the plaintiff's failure to complete a contract and correlative failure to return deposit(s) received.

The plaintiff also contends that he did not perform under the contracts because he was incarcerated at the time.  For the purposes of the pending summary judgment motions the parties do not dispute that the plaintiff was arrested on June 22, 2004 on terroristic threats and bad check charges and that he was incarcerated until July 30, 2005.  However, the affidavits of probable cause submitted by defendant Vaughn do not state that the plaintiff was incarcerated.[6]

---

[6] Four of the five affidavits of probable cause do contain a statement to the effect that Albert Smith advised defendant Vaughn that on July 6, 2004 Beth Stevens told Smith that the

(continued...)

A 42 U.S.C. § 1983 plaintiff who challenges the validity of an arrest warrant by asserting that the law enforcement officer submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978). *Wilson v. Russo,* 212 F.3d 781, 786-87 (3d Cir. 2000). Under *Franks* and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. *Id.* at 787.  "[O]missions are made with reckless disregard if an officer withholds a fact in his ken that 'any reasonable person would have known that this was kind of thing the judge would wish to know.'" *Id.* at 788 (quoting *United States v. Jacobs,* 986 F.2d 1231, 1235 (8th Cir. 1993)).  To determine the materiality of an omission, we insert the facts recklessly omitted and then determine whether or not the "corrected" affidavit would establish probable cause. *Id.* at 789.

---

[6](...continued)
plaintiff was in jail. *Docs. 54-3, 54-4, 54-5 & 54-6.*  However, the affidavits of probable cause do not state that the plaintiff was still in jail at the time of the affidavits. *Id.*

The plaintiff has not pointed to evidence in the summary judgment record that defendant Vaughn knew that the plaintiff was incarcerated at the time that he submitted his affidavits of probable cause.[7]  Therefore, the plaintiff has failed to show that there is evidence to reasonably support an inference that defendant Vaughn knowingly and deliberately, or with a reckless disregard for the truth, made an omission that created a falsehood in applying for the warrants for the plaintiff's arrest.  Nevertheless, assuming arguendo that defendant Vaughn knew that the plaintiff was incarcerated at the time that he submitted his affidavits of probable cause and that the failure of defendant Vaughn to include in the affidavits of probable cause a statement indicating that the plaintiff was incarcerated was an omission that created a falsehood, we conclude that that omission was not material.  As mentioned above in connection with defendant Whitmoyer's motion for summary judgment, the fact that the plaintiff was incarcerated does not negate that there was probable cause to believe that the plaintiff committed theft by deception.  The plaintiff's incarceration would not necessarily have precluded him from completing the buildings (through his employees or

---

[7] In his counterstatement of material facts (doc. 69) the plaintiff does cite to page 22 of defendant Vaughn's deposition where defendant Vaughn testified that he believes that the terroristic threat charge and bad check charge that he filed against the plaintiff detained the plaintiff who was on probation in five different counties.  However, the plaintiff has not pointed to evidence in the summary judgment record that defendant Vaughn knew that the plaintiff was still incarcerated when he filed his affidavits of probable cause.

subcontractors).  Moreover, his incarceration does not excuse
the plaintiff from returning deposits if his incarceration did
in fact prevent him from completing the buildings under the
contracts.

The plaintiff contends that as to the charge regarding
Walter Zeigler & Sons he refused to pay for the concrete
because the driver of the concrete truck damaged some wires on
the job site.  However, nothing regarding any reason for why
the plaintiff stopped payment on the check is included in
defendant Vaughn's affidavit of probable cause and the
plaintiff has not presented evidence to establish that
defendant Vaughn knew of such a dispute.  Accordingly, the
plaintiff has failed to prove by a preponderance of the
evidence that defendant Vaughn knowingly and deliberately, or
with a reckless disregard for the truth, made an omission that
created a falsehood in the affidavit of probable cause with
respect to the charge regarding Walter Zeigler & Sons.

Defendant Vaughn also contends that he is entitled to
summary judgment on the basis of qualified immunity and because
the plaintiff has not established malice or that he suffered a
deprivation of liberty consistent with the concept of seizure
as a consequence of a legal proceeding.  Since we conclude that
there was probable cause for the charges against the plaintiff
filed by defendant Vaughn, we do not address those arguments.

V.   Recommendations.

There is not sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause to initiate prosecutions.  Based on the foregoing, it is recommended that the defendants' motions (docs. 48 & 54) for summary judgment be granted and that the case be closed.


**_/s/ J. Andrew Smyser_**
J. Andrew Smyser
Magistrate Judge

Dated:  August 4, 2008.